# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| SAVVAS CHARALAMBOUS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Docket no. 2:10-cv-375 |
| | ) |
| ELIZABETH ROHNERT CHARALAMBOUS, | ) |
| | ) |
| | ) |
| Respondent. | ) |
| | ) |

## ORDER ON RESPONDENT'S EMERGENCY MOTIONS

Before the Court is Respondent's Emergency Motion to Extend the Time Within Which Respondent Must Turn Over A.C. & N.C. (Docket # 76) and Respondent's Emergency Motion to Stay the Judgment of the District Court (Docket # 77). The Court ordered expedited briefing on these motions and received Petitioner's Opposition to Respondent's Motion to Stay & Petitioner's Motion for Clarification (Docket #s 80 & 81).

## I. LEGAL STANDARD

In order to prevail on a motion to stay, the movant must show (1) the likelihood of success on appeal; (2) the threat of irreparable harm if the stay or injunction is not granted; (3) the absence of harm to opposing parties if the stay is granted; and (4) any risk of harm to the public interest. F.T.C. v. Mainstream Marketing Services, Inc., 345 F.3d 850, 852 (10th Cir. 2003). In a widely-quoted case, the Sixth Circuit held: "Staying the return of a child in an action under the Convention should hardly be a matter of course. The aim of the Convention is to secure prompt return of the child to the correct jurisdiction, and any unnecessary delay renders the subsequent return more difficult for the child, and subsequent adjudication more difficult for

1

the foreign court." Friedrich v. Friedrich, 78 F.3d 1060, 1063 n.1 (6th Cir. 1996). Ultimately, whether to grant a stay and delay the return of the child in this case is within the Court's discretion. Walsh v. Walsh, 221 F.3d 204, 213 (1st Cir. 2000).

## II. ANALYSIS

As discussed below, the Court finds that the majority of the factors weigh against granting a stay in this case.

### A. Likelihood of Success on Appeal

Respondent contends that she will put forth the following arguments on appeal: (1) N.C. is faced with a grave risk and an intolerable situation upon return to Cyprus, and the district court failed to adequately assess both the current psychological harm to N.C. and the likelihood that he will receive mental health treatment in Cyprus; (2) Respondent herself faces a grave risk upon return to Cyprus that, in turn, places her Children in an intolerable situation, and that the district court failed to properly consider evidence related to domestic violence; (3) the district court failed to properly consider the risk of grave harm to A.C. if she were returned without her mother or N.C.; and (4) the district court should have applied a preponderance of the evidence standard (rather than a clear and convincing evidentiary standard) when considering remedies available in the country of habitual residence.

To the extent that these arguments primarily challenge the Court's factual findings, these factual determinations will be reviewed for clear error. See Walsh, 221 F.3d at 214. The Court held two days of evidentiary hearing on this Petition, including hearing the testimony of fifteen witnesses. As the Court noted in its October 12, 2010 Decision, "[o]n many issues as to which Savvas and Elizabeth are the only direct witnesses, there was significant disparity in their testimony." (Findings & Conclusions (Docket # 66) at 21 n. 8.) Thus, the Court's factual

findings reflect the Court's weighing of each parent's credibility as to a variety of incidents. While the First Circuit will ultimately review the record and this Court's factual conclusions, in the Court's own assessment, it is unlikely that these factual findings were clearly erroneous.

Ultimately, all of Respondent's arguments relate to the grave risk defense. This defense required her to prove by clear and convincing evidence that there was a serious risk that return to Cyprus would place the Children in an intolerable situation or expose them to physical or psychological harm. The Court considered all of the evidence presented relating to sexual abuse, physical abuse and spousal abuse, but concluded that the combined evidence fell well short of providing clear and convincing evidence of grave risk to the Children.

Having reviewed all of the arguments put forth by Respondent, the Court finds that it is unlikely that she will prevail on appeal. Accordingly, the Court finds that the first criteria weighs against granting a stay in this case.

### B. Harm to the Parties

The Court acknowledges that in the absence of a stay, the Children will leave this country with Petitioner thereby effectively mooting any appeal. See, e.g., Nicolson v. Pappalardo, First Circuit No. 10-1125, Feb. 19, 2010 Order of the Court (granting a stay pending appeal on this basis). Weighed against this harm to Respondent is the significant harm to Petitioner and the Children by any further delay in returning to Cyprus. Every additional day the Children remain here is a day in which their custody situation remains uncertain. A stay further delays a determination of what is in the best interest of the Children by the Cyprus courts, which are charged with that determination under the terms of the Hague Convention. A stay also leaves N.C. further unsettled with respect to attending school for the 2010-2011 school year.

In short, the Court sees threats of irreparable harm to Respondent in the absence of an injunction and threats of irreparable harm to the Children and Petitioner if a stay is allowed. It may be that the First Circuit can minimize the harm of a stay by expediting the appeal. However, this Court is not in a position to expedite this appeal and determine whether that expedited schedule sufficiently minimizes the harm to Petitioner and the Children subject to the return order.

### C. Public Interest

Finally, the public interest supports denial of the stay. The very purpose of the Hague Convention is "to secure the prompt return of children wrongfully removed to or retained in" a foreign jurisdiction. See Hague Convention, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (1980). Entering a stay in this case would work against the purpose of the Convention and, therefore, against the public interest.

### D. Request for Extension of the October 20, 2010 deadline

This Court originally ordered that the Children be turned over to the custody of Petitioner no later than October 20, 2010. Absent a stay of judgment, Respondent separately seeks an extension of this deadline in order to allow her to seek a stay from the First Circuit. In the Court's assessment, this is a reasonable request and one that is necessary in order to allow the First Circuit to consider this matter at all. Therefore, the Court hereby GRANTS Respondent's Emergency Motion to Extend Time (Docket # 76) and hereby resets the deadline for Respondent to turn over the Children to no later than November 2, 2010. This ruling effectively MOOTS Petitioner's Motion for Clarification (Docket # 80). To the extent that the Motion for Clarification raises concern regarding the safety and well-being of the children during any future final turnover of the Children, counsel for both Petitioner and Respondent are hereby ORDERED

to confer with each other on a plan for turning over the children in a manner that first and foremost provides for the Children's safety and well being. In the absence of any stay or other extension by the First Circuit or a mutual agreement of the parties regarding a turnover plan, the Court will be available to hold an in-person conference of counsel on a turnover plan on November 1, 2010. Counsel shall inform the Clerk whether such a conference is needed before 5 PM on October 29, 2010.

## III. CONCLUSION

For the reasons just stated, Respondent's Emergency Motion to Stay the Judgment of the District Court (Docket # 77) is DENIED. Respondent's Emergency Motion to Extend the Time Within Which Respondent Must Turn Over A.C. & N.C. (Docket # 76) is GRANTED and the deadline is hereby extended to no later than November 2, 2010. Petitioner's Motion for Clarification (Docket # 81) is hereby DENIED AS MOOT with counsel ordered to confer on a future turnover plan that provides for the safety and well being of the Children.

SO ORDERED.

                                               /s/ George Z. Singal
                                               U.S. District Judge

Dated at Portland, Maine on this 18th day of October, 2010.