# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

SAVVAS CHARALAMBOUS,      )
         )
         Petitioner,     )
         )
v.         )  Docket no. 2:10-cv-375
         )
ELIZABETH ROHNERT     )
CHARALAMBOUS,      )
         )
         Respondent.    )
         )

## ORDER REGARDING TEMPORARY CUSTODY

Before the Court is the Emergency Motion to Modify Stay (Docket # 101), which was filed by Petitioner/Appellee Savvas Charalambous ("Father" or "Savvas"). The Motion was transferred to this Court by the First Circuit. (See Nov. 10, 2010 Order of Court (Docket # 100).) Pursuant to the First Circuit's Order, this Court is to make necessary factual findings and rule upon three specific requests in Petitioner's Emergency Motion:

(1) that the Court award the Father complete temporary custody of the Children, N.C. and A.C., pending the outcome of this appeal;

(2) that the Court enter an interim order stating that each parent must confer with the other when making any decisions about medical or other treatment or evaluations of the Children, stating that both parents have equal parental rights with respect to the Children and setting forth guidelines regarding visitation for each parent; and

(3) that the Court enter an order stating that, pursuant to Article 16 of the Hague Convention, neither party may initiate proceedings that would involve any determination of custody with respect to the Children, in any other court, state or federal, while this matter is pending before this Court.

(Pet. Motion (Docket # 101) at 8-9.)

In accordance with this Court's November 10, 2010 Procedural Order, this Court held a conference of counsel on November 15, 2010. Attorney David Abramson appeared for the

Father, Petitioner Savvas Charalambous. Attorney Judith Potter appeared for Respondent Elizabeth Rohnert Charalambous ("Mother" or "Elizabeth").

Both counsel agreed that a testimonial hearing regarding this matter was not necessary. As the Court indicated on the record, it believes holding another testimonial hearing in this matter would add to existing bitterness and not be in the best interest of the Children. With the parties' agreement, the Court decides this matter based on the written affidavits presented by Petitioner, the undisputed, verified portions of Respondent's Response and other undisputed proffers made by counsel at today's conference.

## I. FACTUAL FINDINGS

Based on the record and the stipulations provided by the parties, the Court makes the following findings regarding post-judgment developments:

1. On October 18, 2010, this Court set a November 2, 2010 deadline for Mother to turnover the Children to Father. As of October 20, 2010, Mother, the appellant before the Court of Appeals, had filed a motion to further extend this turnover date and stay judgment pending resolution of her appeal by the First Circuit.

2. On October 26, 2010, Savvas had one of his regularly scheduled after-school visits with his son, N.C. During this visit, Savvas provided N.C. with a ninja costume and play numchucks as part of a Halloween costume.

3. On the evening of October 26th, after returning from this visit, N.C. argued with his Mother. Elizabeth was unable to get N.C. to go to bed. Elizabeth ultimately called 911 for assistance.

4. At 9:21 PM, Deputy Delbert Mason of the Androscoggin County Sheriff's Department was dispatched to the Mother's home on a report of "a 7 year old child that was out of control and violent." (Mason Aff. ¶ 2.)

5. Upon arrival, Deputy Mason met Elizabeth and N.C., who was still wearing a ninja costume. N.C. appeared calm. As noted by the Deputy, N.C.'s grandmother was also present at the house.

6. Ultimately, Elizabeth requested that the Deputy call for an ambulance to transport N.C. to St. Mary's hospital in Lewiston, Maine. N.C. did exhibit violence towards his Mother while resisting attempts to be taken to the ambulance. With the assistance of Deputy Mason, N.C. was secured in the ambulance by seatbelt and his Mother rode with him to St. Mary's hospital.

7. At no point in the evening was Savvas contacted to inform him of the difficulties N.C. was having or of the need to have him transported to the hospital.

8. On October 27, 2010, Savvas was anticipating another regularly scheduled afternoon visit with the Children. At 3:47 PM, Attorney Keef emailed Attorney Abramson to report that she had received a message from Elizabeth saying that Elizabeth was "calling Savvas to tell him [N.C.] was sick." Attorney Abramson responded by email at 4:04 PM indicating that Savvas had received a call from Elizabeth's brother indicating that N.C. was sick and being taken to the doctor. Attorney Abramson requested further details so that Savvas could get additional information. (Pet. Ex. D (Docket # 101).)

9. On October 27, 2010 at 6:50 PM, N.C. was admitted by his Mother to the psychiatric unit of Northern Maine Medical Center (NMMC) in Fort Kent following a six hour

ambulance ride from St. Mary's. According to the treating physician, Jane Gaffrey, N.C. "did very well separating from his mother" upon admission.

10. On the morning of October 28, 2010, Attorney Potter filed a renewed motion for a stay based on the events that had transpired been October 26, 2010 and October 27, 2010. This Motion was simultaneously filed with this Court and with the First Circuit. The unverified Motion represented that N.C. "had engaged in uncontrollable and violent behavior," "was a danger to himself and others," and "tried to attack the police." (Resp. Emergency Mot. (Docket # 88) at 2-3.) The Motion further indicated that N.C. had been transported by ambulance to NMMC where he was to be evaluated for one week "without either parent being present." (Id. at 3.)[1]

11. In fact, NMMC's treatment plan contemplated that N.C. would be discharged on Monday, November 1, 2010 and either parent could visit or seek to have N.C. discharged before that time.

12. The October 28, 2010 renewed Motion provided more detail regarding what had happened to N.C. to his Father and Attorney Abramson than had been provided in any prior communications received by Savvas or his attorneys.

13. In the afternoon of October 28, 2010, the First Circuit granted Elizabeth a stay pending appeal thereby allowing the Children to stay in the United States until the appeal was finally decided.

---

[1] As Attorney Abramson made clear on the record at the November 15, 2010 conference of counsel, at least three representations made in Respondent's October 28, 2010 Motion were false; namely, N.C. did not attack a police officer on October 26, 2010, N.C. was not admitted to NMMC for a one week evaluation and NMMC never indicated that the parents would not be allowed contact with N.C. while he was admitted. Attorney Abramson indicated he contacted Attorney Potter asking her to correct those representations as required by Federal Rule of Civil Procedure 11.

14. On October 29, 2010, Savvas met with school officials at N.C.'s school to discuss N.C.'s hospitalization. He authorized the public school counselor, Katie Hodges, to speak with Dr. Gaffrey at NMMC.

15. As a result of her interactions with N.C. and both parents, Ms. Hodges called child protective services on October 29, 2010 "regarding the possible emotional abuse of N.C. by the Mother." (Hodges Aff. ¶ 14.) The Court has no further information regarding what, if anything, has occurred as a result of that report.

16. N.C. was discharged from NMMC to his Father on Saturday, October 30, 2010 at 10:50 A.M.

17. Apart from this incident, it appears each parent is getting time with the Children and Mother and Father have, by agreement, made changes to the visitation schedule. N.C. continues to attend school on a regular basis.

18. Most recently, Savvas has moved from his South Portland accommodations to a bed and breakfast in Poland. This move has allowed him to be closer to the Children and have visitation with less travel time. Savvas has also been attending some of N.C.'s school events.

19. Elizabeth continues to reside at her Mother's home where she has stayed with the Children since arriving in the United States.

## II. CONCLUSIONS

Based on this Court's examination of the above-summarized factual record and the representations of counsel, the troubling events that led to N.C. being hospitalized at NMMC appear to reflect a panicked parent seeking to avoid the then-pending November 2, 2010 turnover date. Even with no definite turnover date on the horizon, the parents are struggling to engage in

the communication necessary to co-parent two children while they are living apart. This failure to communicate does a disservice to their Children and disrespects the important role that each parent plays in the life of N.C. and A.C.

Petitioner indicates that all of the relief he seeks is warranted under 19-A M.R.S.A. §§ 1653(3) & 1654. These provisions of Maine law instruct that when parents of a minor child are living apart, the Court must divide parental rights and responsibilities based on the best interest of the child with primary concern for the safety and well-being of the child.

Having given due consideration to this standard and after having conferred with counsel, the Court hereby GRANTS IN PART the Emergency Motion and ORDERS:

(1) Neither Mother nor Father shall take N.C. or A.C. for an appointment with any medical or mental health professional or obtain any medical or mental health treatment or evaluation for either child without at least 24 hours notice to the other parent and their respective counsel. Upon hearing that the other parent does not approve of any proposed appointment or evaluation, the parent shall cancel the appointment, evaluation or treatment.

(2) To the extent that N.C. or A.C. require any emergency medical treatment while in the custody of one parent, that parent shall notify his or her attorney and/or the other parent within 30 minutes of deciding to seek emergency medical care. This notification shall include the location of the child and the nature of the emergency. If counsel for either party receives notice of N.C. or A.C. receiving such treatment, counsel will be responsible for notifying opposing counsel within the hour. Counsel and their respective clients shall exchange necessary contact information (i.e., cell phone numbers, e-mail addresses, etc.) to ensure they are able to comply with these notification requirements.

(3) Pending outcome of the appeal and an order from a court with jurisdiction to decide the merits of the parties' custody dispute, both Mother and Father have equal parental rights with respect to the Children. Each parent is entitled to parenting time with the Children. Per the parties' agreement, the Father shall continue to have visitation with both Children at the following times:

Tuesday:  After school until 6:00 P.M.

Wednesday:  After school until 6:00 P.M.

Thursday:  After school until 6:00 P.M.

Saturday:  9 A.M. to 5:00 P.M.

The Mother will retain custody during all other times.

The parties are free to modify this visitation schedule by agreement.[2]

(4) Pursuant to Article 16 of the Hague Convention, neither party may initiate proceedings that would involve any determination of custody with respect to the Children, in any other court, state or federal, while this matter remains pending. This prohibition extends to seeking any protection from abuse order. Any party contemplating seeking a protection from abuse order shall first seek leave from this Court.

(5) The Clerk shall transmit a copy of this Order along with the transcript of the November 15, 2010 Conference of Counsel to the First Circuit for its review.

SO ORDERED.

/s/ George Z. Singal
U.S. District Judge

Dated at Portland, Maine on this 15th day of November, 2010.

---

[2] While Father has requested overnight visitation, on the current record it is not clear that his current accommodations provide the space and bedding necessary to support overnight visits. Additionally, the Court is concerned about the stress the Children would experience as a result of sleeping in multiple places and being required to spend alternating nights in an unfamiliar location over the next four to six weeks.